STATE v. KENNETH RAY SHEDD AND JIMMY LEE SHEDD.

(Filed 14 June 1968.)

1. Criminal Law § 75—

Statements made by defendants when apprehended at the scene of a storebreaking *are held* properly admitted into evidence where the trial court found upon competent evidence on *voir dire* that the statements were freely, voluntarily and understandingly made after defendants had been given the warnings required by *Miranda v. Arizona,* 384 U.S. 436, and further, since the questions asked by the officers constituted a general on-

STATE *v.* SHEDD.

the-scene investigation of the crime and were not the type of custodial interrogation condemned by *Miranda.*

**2. Criminal Law § 84; Searches and Seizures § 1—**

Upon being arrested within a fence surrounding a building which had been broken and entered, an attempt having been made to open a safe therein and various tools and instruments which could be used for safecracking and storebreaking having been found around the safe, defendants showed the officers where their car was parked some 100 yards from the building. *Held:* The officers had a right to search the automobile without a warrant as incident to a lawful arrest, and testimony as to articles found in the car was properly admitted into evidence.

**3. Same—**

A key taken from the pocket of one defendant after his arrest at the scene of a storebreaking and attempted safecracking which unlocked an automobile parked nearby was properly admitted into evidence, no search warrant being necessary to search a lawfully arrested person for evidence connected with the crime.

**4. Criminal Law §§ 42, 84—**

The admission into evidence of clothing worn by defendants when arrested, which was taken from them by officers, and expert testimony as to the results of an examination of the clothing *is held* proper since it is not an unlawful search and seizure for officers to take from the person under arrest and to examine an article of clothing worn by him.

**5. Criminal Law § 158—**

Where the solicitor has agreed to the statement of the case on appeal, he may not thereafter repudiate its accuracy by letter to the Supreme Court, and the Supreme Court is bound by the record as certified and can judicially know only what appears of record.

**6. Criminal Law §§ 128, 130—Record held not to disclose facts requiring mistrial as a matter of law.**

Where it appears in the record on appeal that during a recess in the trial a witness for the State discussed the case within the hearing of the jury and that this was called to the court's attention, but the jury was not instructed to disregard any statement not made under oath by the witness, and where the record does not show what statements the witness made, and defendant's counsel made no motion for mistrial and made no request that the court instruct the jury to disregard such statements, the record fails to disclose facts requiring an order of mistrial as a matter of law or to show an abuse of the court's discretion in failing to order a mistrial, although the better practice would require that the trial judge conduct an investigation and make findings of facts as to what statements the witness made within the hearing of the jurors and determine whether a mistrial was proper.

**7. Criminal Law § 130—**

Refusal of the court after verdict to inquire as to whether notes had been taken by a juror and, if so, whether such notes were used in the jury's deliberations *is held* proper, the making and use of trial notes by the jury not being misconduct, and defendant's request for such inquiry coming too late after verdict.

STATE *v.* SHEDD.

APPEAL by defendants Kenneth Ray Shedd and Jimmy Lee Shedd from *Snepp, J.,* 7 August 1967 Schedule "C" Criminal Session of MECKLENBURG.

Criminal prosecution on three indictments, which were consolidated and tried together. The first indictment charges Kenneth Ray Shedd, Albert Leon Shedd, and Jimmy Lee Shedd on 2 July 1967 in the county of Mecklenburg with feloniously breaking and entering a building occupied by one Borden's Milk & Ice Cream Company, a corporation, with intent to commit larceny of property of more than $200 in value, a violation of G.S. 14-54. The second indictment charges the same defendants at the same time and place with feloniously attempting by the use of drills and other tools to break into a combination locked safe of the Borden's Milk & Ice Cream Company, a corporation, a violation of G.S. 14-55. The third indictment charges the same defendants at the same time and place with feloniously having in their possession, without lawful excuse, implements of storebreaking, to wit, electric drills and bits, punches, a 3-foot piece of ¾ inch pipe, a pair of large bolt cutters, gloves, a wrecking bar, a large hammer, an axe, a pry bar, and a flashlight, a violation of G.S. 14-55.

All three defendants, who were represented by their counsel Frank Rankin, entered a plea of not guilty to all the charges against them. Verdict: Guilty as charged in each of the three indictments as to each defendant. When the verdict was returned, defendants' counsel asked that the jury be polled. The jury was polled and each juror, as his name was called, said that his verdict was that each defendant was guilty of all three charges in the indictments against them, and that he still assented to that verdict.

From judgments of imprisonment as to Kenneth Ray Shedd and Jimmy Lee Shedd, they appealed to the Supreme Court. Albert Leon Shedd was sentenced to imprisonment on the three charges against him, but his sentences of imprisonment were suspended, and he was placed on probation. Albert Leon Shedd did not appeal.

Upon both appeal entries the trial court found that the defendants were indigent and appointed their trial attorney to perfect their appeal, to file a brief in their behalf, and to argue the case in the Supreme Court. This was done, the cost of the appeal being borne by the taxpayers of Mecklenburg County.

*Attorney General T. W. Bruton and Assistant Attorney General Millard R. Rich, Jr., for the State.*
*Frank Battley Rankin for defendant appellants.*

PARKER, C.J. This is a brief summary of the State's evidence: On 2 July 1967 Borden's Milk & Ice Cream Company, a corporation, owned and occupied a building on the service road off Interstate Highway #85 between North Graham Street and Sugar Creek Road in the city of Charlotte, North Carolina. The building contains refrigerated space, both high and low temperature, and office space. The office space faces the service road, and the refrigeration facilities are behind the office. A high fence encircles the entire lot. A tunnel about 34 or 35 inches high and 20 inches wide and approximately 90 feet long runs between two of its buildings. The purpose of this tunnel is to enable it to circulate hot air to keep ice from accumulating between the two low temperature rooms in the two buildings. A grate is placed there to throw hot air down into this tunnel.

An ADT burglar alarm system was installed upon the premises of Borden's. When a door is opened at Borden's, a light comes on at a switchboard in an office of the ADT Detective Service located at 325 East Ninth Street. About 9:28 a.m. on Sunday, 2 July 1967, Richard J. Rice, Jr., an employee of the ADT Detective Service, was in its office at 325 East Ninth Street and received a DT alarm there indicating that a door was open at Borden's. Rice immediately sent to the scene James Paul Gentry, the serviceman on duty at the office, and also called the county police, who in turn notified the city police. Gentry proceeded to the Borden building and upon arrival he saw there Officer Smawley, a city policeman. Soon thereafter Marvin Lee Ross, an employee of Borden's arrived at the scene. Ross unlocked the gate to the fence. Gentry went inside. Officer Smawley went back to his police car, got his shotgun out of the car, and gave it to Ross. Ross and Smawley went inside the fence and when they got about half-way back past the building, they saw Gentry coming around the building with the three defendants. Gentry had a pistol in his hand. These three men had on dirty, muddy clothes. Two of them had on black or dark gloves. Smawley took a two-barrel Derringer from the person of Albert Leon Shedd. A search of the premises of Borden's disclosed that entrance to the building was gained through a tunnel and that a grate over the tunnel had been removed at the end of the tunnel. Four cement blocks had been knocked out of the southernmost wall of the building. The northernmost wall of the storage room had bricks knocked down and there was a hole in the wall. The walls had not been damaged when the plant was closed on Saturday, the night before, at 6 p.m. The safe in the drivers' check-out room had been damaged. The hinges of the lock had been knocked off and there was a small

hole drilled in the door. In the storage room of the building there was found a hammer, drill, flashlight, crowbar, a shop hammer of about 10 pounds, a pry bar, a ¾ inch pipe approximately three feet long, a tire tool, and some assorted punches 'and chisels. Some of these were on the floor and others were in a burlap sack. The storage room was near the hole that was knocked out in the wall of Borden's.

B. D. Brown, an employee of the Mecklenburg County Police Department, testified that he had advised the defendants as to all their constitutional rights before John F. McAuley, also an employee of the Mecklenburg County Police Department, asked defendants any questions. While defendants were under arrest for storebreaking, and possession of burglar's tools not for a lawful use, and for attempting to break open a safe in the Borden building, and after defendants had been advised of all their constitutional rights, at the scene of the arrest within the fence on the premises of Borden's, McAuley asked defendants their names and where their automobile was. The three defendants told the officers their names and showed them where to drive to a wagon road in a field in the woods, and at the end of the wagon road there was found a 1962 white Ford. This Ford was approximately 100 yards in a straight line from the fence at the back of Borden's in the woods. Defendants objected to the admission of the testimony that they had showed the officers where their car was and also objected to any statements they had made. The trial court found as a fact that the statements referred to allegedly made by defendants were made freely, voluntarily, and understandingly after defendants had been informed of the nature of the charges against them, of their right to remain silent, of the possible use against them of any statements they might make, of their rights to confer with counsel before making any statement, and that if they were unable to hire counsel, they were entitled to have counsel appointed to represent them. The court overruled their objections and defendants excepted.

Jimmy Lee Shedd when searched had an inch drill bit in his rear pocket. A search of the car in the woods disclosed that bolt cutters were in it. McAuley testified that Jimmy Lee Shedd said, when the officers arrived at the car, that there was a creek in the vicinity and that he had gone down to the creek to look for bait to go fishing. Jimmy Lee Shedd said further that when they left the car in the woods they went up to a hole in the fence around Borden's, that the bolt cutters were there and also the box with Independence Electric on it, and that he and his two brothers picked them up and carried them back to their car and placed them in it.

After the three defendants were arrested on the charges for which they were later indicted, they were carried to the Mecklenburg County police station. At this police station the clothes and shoes defendants were wearing were taken off of them, and they were given other clothes to wear. These clothes were bundled up and sent to the Federal Bureau of Investigation in Washington. The officers took sweepings from the floor and from the brick walls or cement walls of Borden's and sent them to the Federal Bureau of Investigation in Washington.

Thomas J. Hughes is an employee of the Federal Bureau of Investigation in the Laboratory in Washington, D. C. He testified in detail as to his education, training, and experience in the examination and comparison of material of a mineral nature, including soil, safe insulation material, building materials such as plaster, mortar, concrete, etc. He is assigned to the Soils and Minerals Unit of the Laboratory. He has done this work for a little over four years. He has been held qualified as an expert witness in this field about fifty times in various states of the Union and in the Federal courts. The court found that Mr. Hughes was an expert Geologist and Mineralogist with special training in the field of examination and comparison of materials of a mineral nature. To this finding defendants did not object. He testified in brief summary: He examined the clothes of the three defendants sent to the F.B.I. Laboratory, and he examined sweepings from the floor of Borden's. He testified in detail as to the minute examination he made of this material. He testified in substance that in the shirts of the defendants he found some small particles of mortar which matched the mortar of the sweepings on the floor of the Borden building, and he also found in these clothes material which matched the cinder block, the mortar, and also the brick from the sweepings from the Borden building.

The State's evidence was amply sufficient to carry the case to the jury on all the counts in all the bills of indictment against all the defendants. Defendant appellants made no argument to the contrary. They made no motion that the State's case should be non-suited.

Appellants assign as error the trial court's finding that appellants' replies to questions as to their names when they were arrested by the officers inside the fence of Borden's, and other statements they made there after they had been warned in detail of their constitutional rights were freely, voluntarily, and understandably made. This assignment of error is overruled for the following reasons: (1) The trial judge's finding of fact is amply supported by competent evidence, and consequently it is conclusive and binding on appeal.

*S. v. Gray,* 268 N.C. 69, 150 S.E. 2d 1; (2) all the questions which the officer or officers asked defendants after they had been caught within the fence of Borden's plant early Sunday morning constituted that general type of on-the-scene questioning which is customarily conducted by an officer or officers charged with the duty of investigating the breaking and entry into buildings, and such questioning is a far cry from the custodial interrogation condemned by *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977; *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 10 A.L.R. 3d 974. *S. v. Meadows,* 272 N.C. 327, 158 S.E. 2d 638. Appellants have not favored us with any citation of authority to support their contention that the alleged statements of appellants under the circumstances here were incompetent.

Appellants assign as error the search of their automobile parked in the woods about 100 yards back of Borden's plant and testimony as to what was found in it. Appellants about 9:35 a.m. Sunday morning had been caught within a fence encircling Borden's. There was evidence tending to show that they had attempted to drill a hole in a safe in a building occupied by Borden's, that around this safe were many instruments and tools that could be used for safecracking or storebreaking, that they were arrested by the officers at the scene, and that they told the officers where their car was parked and showed them the way to it. According to these facts, it is our opinion, and we so hold, that the officers had a right to search this automobile and to testify as to the contents found therein as an incident to a lawful arrest. Under all the facts and circumstances, the officers had probable cause to search the automobile and the search was reasonable. *S. v. Carver,* 265 N.C. 710, 144 S.E. 2d 855; 79 C.J.S. Searches and Seizures § 67 and 67e; 47 Am. Jur. Searches and Seizures § 19.

Kenneth Ray Shedd assigns as error the introduction in evidence of a trunk key taken from his pocket which unlocked the 1962 Ford parked in the woods behind the Borden building. This assignment of error is overruled. Kenneth Ray Shedd was under lawful arrest when searched. "A search warrant is not necessary to search lawfully arrested persons for evidence connected with the crime." 79 C.J.S. Searches and Seizures § 67 at 842. In accord, *S. v. Tippett,* 270 N.C. 588, 596, 155 S.E. 2d 269, 275.

Appellants assign as error the admission in evidence of clothing they were wearing at the time of their arrest which was taken off of them by officers and sent to the Federal Bureau of Investigation in Washington for examination and the testimony of an expert there as to what he found upon an examination of these clothes. This assignment of error is overruled upon the authority of *S. v. Ross,* 269

N.C. 739, 153 S.E. 2d 469. In that case Lake, J., speaking for the Court, said:

> "There was no error in overruling the defendant's objection to the introduction in evidence of the trousers taken from the defendant while he was in custody. These trousers were not obtained by a search of his mother's residence. They were selected and put on by the defendant when the officers aroused him from the couch and told him to get dressed. After he was placed under arrest and given other clothes to wear, these trousers were taken and examined for blood stains. It is not an unlawful search or seizure for officers to take from the person under arrest and to examine an article of clothing worn by him. See: 47 Am. Jur., Searches and Seizures, § 53; 5 Am. Jur. 2d, Arrest, § 73; 6 C.J.S., Arrest, § 18. It is not error, nothing else appearing, to admit in evidence, over objection, testimony as to the condition or contents of such garments discovered by such examination or to admit in evidence the garment itself."

See in accord 2 Strong, N. C. Index 2d, Criminal Law, § 42.

Appellants assign as error the following which appears on page 128 of the record:

> "PROCEEDINGS
>
> "At the close of the cross examination of the witness, James P. Gentry, the Court took a ten (10) minute recess and the jury retired into the hall at the back of the court room. The witness, James P. Gentry, also went into the hallway at the back of the court room and entered into a discussion with other witnesses and spectators, as to the incidents concerning the charges against the defendants, which took place on the morning of July 2nd, 1967, at the Borden Milk and Ice Cream Company, all in the hearing of the jurors. This was all called to the attention of the Court and at no point in the proceedings did the Court instruct the jury that said statements were not made under oath from the witness stand and, therefore, should not be considered as evidence. The defendants contend that this fact alone would entitle them to a new trial. EXCEPTION No. 77."

We have before us a letter from the solicitor dated 17 May 1968 stating that he agreed to the statement of the case on appeal, that he accepted and signed as true the case on appeal without reading it, and he now wishes to repudiate in part the accuracy of the above statement. We have a letter from the trial judge dated 17 May 1968 stating that the statement that we have quoted above is not in all respects accurate. However that may be, the solicitor for the State

agreed to the statement of the case on appeal, and the record on ap-
peal imports verity. The Supreme Court is bound by the record as
certified and can judicially know only what appears of record. 1
Strong, N. C. Index 2d, Appeal and Error, § 42. There is nothing in
the record to show what James P. Gentry said to the witnesses and
spectators in the hearing of the jurors outside the courtroom. It is
not shown that anything he said was prejudicial to appellants. A
reading of the testimony of James P. Gentry shows that he testified
in substance that he was an employee of ADT Detective Service and
went to the building occupied by Borden on Sunday morning, 2
July 1967; that when the fence around Borden's was unlocked he
went in and came back out with the three defendants who had their
hands raised, Gentry being armed. So far as the record shows that
is all that Gentry knew about the case. He had testified to those
facts before the alleged conversation took place with witnesses and
bystanders in the presence of the jury outside the courtroom. Those
facts were not in dispute in the trial of the case. The appellants'
defense was that they did not attempt to blow open the safe or
break into the building of Borden's, but went inside the fence around
Borden's having found a hole cut in the fence. Appellants' counsel
apparently did not think it was prejudicial at the time because he
did not move the court for a mistrial, and did not request the court
to instruct the jury not to consider anything they heard Gentry say.
Perhaps it would have been well had the trial judge conducted an
investigation and found as facts what Gentry said to witnesses and
spectators in the hearing of the jurors and whether it was proper to
have ordered a mistrial.

This is said in *Keener v. Beal*, 246 N.C. 247, 98 S.E. 2d 19:

"In McIntosh North Carolina Practice and Procedure, 2d
Ed., Vol. 2, p. 67, it is said: 'Any misconduct of the jurors or of
others which may influence them in finding a verdict may be
considered as operating to cause a mistrial or to set aside the
verdict; but the rule is the same as stated above in regard to
separation. Where the circumstances are such as merely to give
rise to a suspicion that there may have been improper influence,
the Judge may in his discretion order a mistrial or set aside the
verdict, and where there was such influence he should do so as
a matter of law. What is such misconduct must depend to a great
extent upon the circumstances of each case.' The text is sup-
ported by our cited cases beginning with *S. v. Tilghman*, 33
N.C. 513, and including *Lewis v. Fountain*, 168 N.C. 277, 84
S.E. 278; *Baker v. Brown*, 151 N.C. 12, 65 S.E. 520, and other
cases cited in the opinions in those cases."

To the same effect: *Stone v. Baking Co.*, 257 N.C. 103, 125 S.E. 2d 363.

This is said in 39 Am. Jur., New Trial, § 100:

". . . Even in criminal cases a new trial ordinarily will not be granted if there is nothing to show that the communication between the jury and the witness was improper or that the party complaining was prejudiced thereby."

The trial judge is clothed with power of discretion as to whether he should order a mistrial or set aside a verdict by reason of alleged misconduct of a juror or jurors "because of his learning and integrity, and of the superior knowledge which his presence at and participation in the trial gives him over any other forum. However great and responsible this power, the law intends that the Judge will exercise it to further the ends of justice, and though, doubtless it is occasionally abused, it would be difficult to fix upon a safer tribunal for the exercise of this discretionary power, which must be lodged somewhere." *Moore v. Edmiston*, 70 N.C. 471.

The burden is on the appellants not only to show error but that the alleged error was prejudicial and amounted to the denial of some substantial right. 1 Strong, N. C. Index 2d, Appeal and Error, § 46. Upon the facts of the instant record, it is our opinion that the trial judge was not required as a matter of law to order a mistrial in the case, and that no abuse of discretion on his part appears. This assignment of error is overruled.

This appears on page 124 of the record:

"MR. RANKIN: One of my clients called it to my attention just as I arose to make the motion to set aside the verdict, that notes had been taken by the juror sitting in No. 5 Box — Mrs. Ruth Griffin — and without inquiry we wouldn't know whether they were used or not in their deliberations, but I requested inquiry while the jury was present, your Honor.

"THE COURT: MOTION IS DENIED. EXCEPTION No. 74."

Appellants assign as error the refusal of the court to inquire as to whether the notes taken by the juror, Mrs. Ruth Griffin, were taken into the jury room and were used or not used in the jury's deliberations.

Most authorities in this Nation take the view that the making and use of trial notes by the jury is not misconduct but is proper, and may even be desirable, where it is unattended by undue consumption of time. *S. v. Goldberg*, 261 N.C. 181, 134 S.E. 2d 334,

cert. den. 377 U.S. 978, 12 L. Ed. 2d 747; *Cowles v. Hayes,* 71 N.C.
230; Annot. in 14 A.L.R. 3d 831 *et seq.* entitled "Taking and Use of
Trial Notes by Jury"; 89 C.J.S., Trial, § 456; 23A C.J.S., Criminal
Law, § 1367; 53 Am. Jur., Trial, § 851 and 1967 Cumulative Supplement thereto; 5 Wharton's Criminal Law and Procedure, Anderson
Ed., Deliberations of Jury, § 2112.

As long ago as 1874 this Court in *Cowles v. Hayes, supra,* used
this language:

> "The Court allowed the jury to copy a memorandum of articles sold and the prices thereof, made out by the plaintiff's
> counsel. This was objected to by the defendants. But the case
> states that this memorandum was but the copy of the account
> proved and admitted in evidence. It was therefore nothing more
> than a note of the evidence taken down by a juror, which was
> not only proper, but often commendable."

In *S. v. Goldberg, supra,* the Court held that in the trial of two
defendants in a long and complicated criminal trial upon eight indictments, containing 29 counts, and taking 34 pages of the record
to reproduce them, that it was not prejudicial error for the court to
deliver to the jurors blank tablets for the purpose of enabling them
to list the indictments and the counts as recited to them by the court.

Everyone with long experience on the trial bench has occasionally seen a juror or jurors taking notes of the testimony during the
trial, particularly in long drawn-out or complicated trials. It is a
fact of general and common knowledge that almost all of our trial
judges on the Superior Court Bench take and use notes during the
trial. *Vincent v. Woody,* 238 N.C. 118, 121, 76 S.E. 2d 356, 359.

If Mrs. Ruth Griffin was taking notes during the trial, it must
have come to the attention of counsel and his clients before the verdict was rendered. Before the verdict was rendered, neither counsel
nor his clients made any objection to Mrs. Ruth Griffin's taking
notes, if she did. This is said in an annotation in 14 A.L.R. 3d, § 7,
p. 850:

> "It seems well settled that irrespective of the propriety of
> jurors taking trial notes, any error therein may not be urged as
> grounds for reversal unless prompt objection thereto was made
> at the time the note-taking first came, or should have come, to
> the attention of the appealing party."

The refusal of the trial court to conduct an inquiry of Mrs. Ruth
Griffin as to whether she had taken notes during the trial and, if so,
what use she had made of them, upon the mere statement of counsel
that one of his clients had called it to his attention after the verdict

that Mrs. Ruth Griffin was taking notes during the trial, shows no prejudicial error in respect to appellants' rights, and, further, the request of defendants' counsel to the judge to make such an inquiry came too late after verdict. This assignment of error is overruled.

The court has carefully examined all appellants' assignments of error which have been brought forward in their brief and discussed with citation of authority, and no error is made to appear which would warrant disturbing the verdicts and judgments below. All assignments of error of appellants are overruled.

In the trial below we find

No error.