STATE OF NORTH CAROLINA v. CHARLES AUSTIN PEARSON

No. 7425SC832

(Filed 15 January 1975)

1. Criminal Law § 88— cross-examination — assumption of fact not in evidence

Even if the solicitor assumed a fact not in evidence in asking a witness on cross-examination to "point out where you say the defendant was when he fired the second shot," defendant was not entitled to a new trial by reason thereof.

2. **Criminal Law § 68— hair comparison — expert testimony**

In a homicide prosecution, the trial court properly allowed an expert witness for the State to testify that, as a result of a microscopic comparison, hair found on the murder weapon was sufficiently similar to hair removed from the victim to conclude that they could have had a common origin.

3. **Criminal Law § 89— bias of witness who hasn't testified**

The trial court properly excluded evidence showing bias on the part of a witness who had not yet testified.

4. **Criminal Law § 77— exculpatory statements — inadmissibility as part of res gestae**

In this homicide prosecution, an exculpatory statement made by defendant to an officer at the police station some time after the crime was not admissible as part of the *res gestae* and was properly excluded by the trial court.

5. **Criminal Law § 95— testimony competent for corroboration — instruction — no restriction on other testimony**

Trial court's instruction that the jury could "consider this evidence solely for the purpose of corroborating" defendant's wife clearly restricted only testimony concerning statements made by defendant's wife and did not restrict the remaining testimony of the witness which was independently admissible.

6. **Homicide § 28— instructions — failure to review testimony — absence of request**

Failure of the trial court in a homicide case to include in the charge defendant's testimony that he feared for his life was not error where defendant failed to call such failure to the attention of the court in time for correction.

7. **Homicide § 27— manslaughter instruction shown by record — jury not misled**

While the appellate court is bound by the record which shows that the court charged the jury that "In voluntary manslaughter as it applies to this case is the unintentional killing of a human being by an act done in a criminally negligent way," the jury could not have been misled by such a charge where the court went into a detailed definition of involuntary manslaughter and charged the jury in the final mandate as to what they must find in order to return a verdict of either voluntary or involuntary manslaughter.

8. **Homicide § 27— instructions on manslaughter — error cured by manslaughter verdict**

Where the jury in a homicide case returned a verdict of guilty of manslaughter, defendant was not prejudiced by the court's failure to instruct the jury to consider the actions of all three of defendant's assailants rather than only the actions of the deceased assailant in determining whether there was adequate provocation to reduce the crime to manslaughter.

9. **Homicide § 28— self-defense — actions of all three of defendant's assailants — instructions**

   The trial court in a homicide case sufficiently instructed the jury to consider the acts of all three of defendant's assailants rather than only the actions of the deceased assailant in determining whether defendant acted in self-defense.

10. **Homicide § 28— instructions on self-defense — belief in necessity "to shoot" deceased**

    The trial court in a homicide case did not err in its charge on self-defense in referring to defendant's belief that it was necessary "to shoot" the deceased.

11. **Homicide § 28— self-defense — use of deadly force — erroneous instruction cured by subsequent instruction**

    While the trial court's charge that a person may not ordinarily claim self-defense when he has used deadly force to quell an assault by someone who does not have a deadly weapon unduly restricted defendant's plea of self-defense, such error was cured by the court's subsequent instruction detailing what defendant must show to excuse his act on the ground of self-defense.

12. **Criminal Law § 101— use of notes by jurors**

    The trial court in a homicide case did not err in refusing to prohibit the jurors from using notes in their deliberation which were written by them during the trial.

APPEAL by defendant from *Winner, Judge,* 1 April 1974 Session of Superior Court held in CALDWELL County. Heard in the Court of Appeals on 21 November 1974.

Defendant was tried upon a bill of indictment charging him with the murder of William Granthu Morgan.

The State's evidence tended to show the following occurrences leading to Morgan's death. On the evening of 28 September 1973, Morgan, Charles Miller, Leo King, and their wives attended a dance at the Cedar Rock Country Club. Shortly after midnight they left the Club to return home. The wives left first in a separate car. Moments later the men drove away from the Club, but they encountered another car parked in the exit. The driver of this other car was defendant. Defendant and his wife had also attended the dance. Approaching the exit, Miller and King saw defendant trying to force a woman into his car. Defendant yelled at the Morgan car, telling them to put out their headlights. Defendant then approached the driver of the car, Morgan, and Morgan asked him what was going on. After answering that it was none of his business, defendant reached through the open car window and struck at Morgan.

An ensuing struggle occurred outside the Morgan car, with Morgan and Miller attempting to subdue defendant. Defendant told Miller and Morgan that the woman was his wife. Hearing this, Miller and Morgan returned to their car. But before they could leave, defendant returned to the Morgan car with a gun. Miller and Morgan got out of their car begging defendant not to shoot. Defendant shot Morgan and immediately thereafter drove to the sheriffs office.

Defendant's evidence tended to show that his wife had gotten out of the car for the purpose of returning to the dance. Defendant was trying to put her back into the car when suddenly he was jumped by several men. The men were severely beating defendant even though he told them that the woman was his wife and that it was a family affair. During the course of the fight, defendant managed to get back into his car and grab a pistol which belonged to his sister. He got out of his car and fired a warning shot into the air. However, the fight continued, and he used the pistol as a club to flail Miller and Morgan. Morgan was struck on the head, the gun fired a second time, and Morgan fell to the ground. Donald Watson was running his hunting dogs that night and observed the fight from a distance of around seventy-five feet. He related a description of the fight that was substantially similar to defendant's.

From a jury verdict of voluntary manslaughter and a prison sentence of not less than sixteen nor more than twenty years, defendant appealed.

*Attorney General Carson, by Associate Attorney Archie W. Anders, for the State.*

*Bailey, Brackett & Brackett, by Allen A. Bailey, for defendant appellant.*

MARTIN, Judge.

[1] The following question was asked on cross-examination over defendant's objection:

"Q. If you will point out where you say the defendant was when he fired the second shot."

Essentially, defendant argues the prosecutor improperly attributed testimony to the witness, Donald Watson, because Watson never stated that defendant "fired the second shot."

Watson did testify that defendant was swinging the gun and "[w]hen he came around with the gun I don't know whether he hit him or not, but the gun went off again and I saw the man fall." On cross-examination a question should not assume facts not in evidence; even so, we fail to see how this lone question from the prosecutor entitles defendant to a new trial where it was made for the purpose of requesting the witness to illustrate his testimony by reference to a drawing of the scene.

[2]   Next, defendant contends the trial court erred in allowing an expert witness for the State to testify that, as a result of microscopic comparison, hair found on the murder weapon was sufficiently similar to hair removed from the victim to conclude that they could have had a common origin. The witness also stated that such a comparison did not provide a basis for absolute personal identification. Defendant argues this evidence lacked any probative value in showing the source of the hair. In *State v. Barber*, 278 N.C. 268, 179 S.E. 2d 404 (1971), the Court rejected a similar argument that such evidence was too speculative. This assignment of error is overruled.

[3]   The trial court's exclusion of testimony from defendant's witness, Donald Watson, which would have shown animosity between Watson's sister and defendant forms the basis of defendant's next assignment of error. Watson's sister was a witness for the State, but she had not yet testified. The trial court properly excluded this evidence showing bias on the part of a witness who had not yet testified.

[4]   Defendant also argues it was error for the trial court to exclude testimony of a deputy sheriff regarding a conversation he had with defendant at the police station after the fight. " 'What a party says exculpatory of himself after the offense was committed, and not part of the *res gestae,* is not evidence for him. Otherwise he might make evidence for himself.' *State v. Stubbs,* 108 N.C. 774, 13 S.E. 90." *State v. Mitchell,* 15 N.C. App. 431, 190 S.E. 2d 430 (1972). Defendant argues his declaration at the police station was admissible as part of the *res gestae.* "For a declaration to be competent as part of the *res gestae,* at least three qualifying conditions must occur: (a) The declaration must be of such spontaneous character as to be a sufficient safeguard of its trustworthiness; that is, preclude the likelihood of reflection and fabrication; . . . (b) it must be contemporaneous with the transaction, or so closely connected with the main fact as to be practically inseparable there-

from; . ·. . ; and (c) must have some relevancy to the fact sought to be proved." *Coley v. Phillips,* 224 N.C. 618, 31 S.E. 2d 757 (1944). The record does not disclose circumstances which would indicate that defendant's declaration, made at the police station some time after the criminal act, is of such spontaneous nature as to be trustworthy. The trial court correctly excluded the testimony. In addition, the record does not disclose what the answer to the question would have been had the witness been allowed to answer, therefore, defendant has failed to show prejudice. *State v. Turner,* 21 N.C. App. 608, 205 S.E. 2d 628 (1974).

[5] Sherry Pearson Huffstetler, defendant's sister, was a passenger in defendant's car and testified on defendant's behalf. She, began to testify about statements made by defendant's wife when the prosecutor objected. The trial court then stated, "Members of the jury, you may consider this evidence solely for the purpose of corroborating the testimony of the last witness (defendant's wife) if you find that it corroborates her testimony and for no other purpose." (Parenthesis added.) Defendant argues the failure of the trial court to lift its restriction erroneously restricted the remaining testimony of the witness which was independently admissible. It is apparent that the trial court restricted only that testimony concerning statements made by defendant's wife. Furthermore, counsel for defendant should have brought the matter to the attention of the trial court if he construed the court's ruling to be otherwise.

Defendant takes exception to the trial court's charge in seven · respects.

[6] First, defendant contends the trial court should have included in its charge defendant's testimony that he feared for his life. "The general rule is that objections to the charge in stating contentions of the parties or in recapitulating the evidence must be called to the court's attention in apt time to afford opportunity for correction." *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974). In the present case the trial court cautioned the jury to consider all the evidence whether it was included in the charge or not. We perceive no error in the charge in this respect.

[7] Secondly, defendant assigns as error the following portion of the court's charge:

"Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation and

deliberation. In voluntary manslaughter as it applies to this case is the unintentional killing of a human being by an act done in a criminally negligent way."

Defendant contends that the trial court sufficiently confused the jury regarding the difference between voluntary and involuntary manslaughter to justify a new trial. We disagree. The second sentence in the foregoing quote does not make good grammatical sense as it appears in the record. We do not know who is initially responsible for its presence, but we are bound by the record which the solicitor agreed to as the "Case on Appeal." Even so, the trial court went into a detailed definition of involuntary manslaughter, and in its final mandate the court instructed the jury as to what they must find in order to return a verdict of voluntary manslaughter and what they must find to return a verdict of involuntary manslaughter. We are convinced that the jury was not misled in this regard.

[8, 9] Thirdly, defendant argues the jury should have been instructed to consider the actions of all three assailants in determining whether there was adequate provocation to reduce the crime to manslaughter or to excuse it altogether on the ground of self-defense. The trial court instructed the jury that in order to reduce the crime to manslaughter the defendant must show that he shot W. G. Morgan in the heat of passion and that this passion was produced by the acts of W. G. Morgan which the law regards as adequate provocation. Since the verdict of the jury reduced the crime to manslaughter, we fail to see how defendant was prejudiced in this regard. Defendant also contends the charge precluded his plea of self-defense, because the jury was not instructed to consider the acts of all three assailants in determining whether defendant reasonably believed he was in danger of death or great bodily harm. We disagree. The trial court referred to the number of attackers, their size, the fierceness of the attack, and the circumstances as they appeared to defendant at that time. Furthermore, after some deliberation, the jury returned for additional instructions, and the trial court specifically instructed them to consider the number of assailants in determining the reasonableness of defendant's belief that it was necessary to shoot W. G. Morgan. We do not perceive that the jury had been misled in this respect.

[10] Fifthly, defendant questions portions of the charge on self-defense where the trial court referred to defendant's belief that it was necessary "to shoot" the deceased. Defendant ob-

jects to this characterization of his act because there was evidence tending to show that the gun accidentally discharged. We find no error in this respect. The jury was instructed that if Morgan died by accident then defendant would not be guilty if there was no criminal neglect on defendant's part. On the other hand, if Morgan did not die by accident then there is nothing objectionable in stating the right to self-defense in terms of defendant's belief that it was necessary "to shoot" Morgan. An intentional act cannot also be accidental. *State v. Phillips*, 264 N.C. 508, 512, 142 S.E. 2d 337, 339 (1965).

Sixthly, defendant argues that the trial court erred by failing to define "criminal negligence." The record discloses a full and accurate definition in the charge. Defendant's argument is without merit.

[11] Lastly, defendant argues the following instruction amounts to reversible error.

> "Now, members of the jury, under the law of this State a person may not normally avail himself of self-defense when he has used deadly force to quell an assault or attack by someone who does not have a deadly weapon."

The trial court repeated this instruction on three occasions. Immediately after such instructions, the court charged substantially as follows:

> "However, if you are satisfied that because of the number of attackers or their size or the fierceness of the attack or all three of those things put together the defendant believed from the circumstances that he was in danger of death or suffering great bodily harm and that the belief was reasonable under the circumstances as they appeared to him at that time and that the force was not excessive and that defendant was not the aggressor, then the defendant would have satisfied you of self-defense."

Defendant argues the above instructions conflict and the first one erroneously restricts his right to assert self-defense under the authority of *State v. Francis*, 252 N.C. 57, 112 S.E. 2d 756 (1960). *State v. Francis* is relevant. However, *State v. Wooten*, 192 N.C. 35, 133 S.E. 161 (1926), presents an almost identical issue. The trial court's charge that a person may not ordinarily claim self-defense when he has used deadly force to quell an assault, standing alone, unduly restricts defendant's plea of self-

defense. However, as in *State v. Wooten,* any error committed was completely removed by the subsequent instruction detailing what defendant must show to excuse his act on the ground of self-defense.

[12] Defendant, in his fifth assignment of error, argues the trial court erred by refusing to prohibit the jurors from using notes in their deliberation which were written by them during trial. "Most authorities in this Nation take the view that the making and use of trial notes by the jury is not misconduct but is proper, and may even be desirable, where it is unattended by undue consumption of time. [Citations.]" *State v. Shedd,* 274 N.C. 95, 161 S.E. 2d 477 (1968). The present case was a rather long and serious one, and we find no error in the trial court's action.

We have carefully reviewed defendant's remaining two assignments of error and find them to be without merit.

No error.

Judges BRITT and HEDRICK concur.