STATE OF NORTH CAROLINA v. RONNIE LOUIS CONYERS

No. 7618SC1016

(Filed 20 July 1977)

1. Criminal Law § 66.16— photographic identification — independent origin of in-court identification

The trial court's determination that a robbery victim's in-court identification was of independent origin and not tainted by an out-of-court photographic identification was supported by the evidence where the victim testified that defendant and another man were with him

for three to five minutes in the back of the store where the robbery occurred; that the back area of the store was well lighted with fluorescent lights; and that for much of the time "the man with the knife," whom he identified as the defendant, was facing him.

**2. Criminal Law § 66.7— photographic identification — impermissible suggestiveness — effect on in-court identification**

The admission over defendant's objection at trial of eyewitness identification testimony following a pretrial identification by photograph will be held reversible error only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

**3. Criminal Law § 66.9— photographic identification — yellow border on defendant's photograph — no impermissible suggestiveness — harmless error**

A photographic identification procedure was not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" because the photograph of defendant had a yellow tinged border which resulted from the photographic development process and made it distinctive from the other photographs; therefore, a robbery victim's in-court identification of defendant was not tainted by her pretrial photographic identification of him. Moreover, the admission of the in-court identification testimony, if erroneous, was harmless beyond a reasonable doubt since the witness's identification testimony was so weak—she testified only that defendant "resembles one of the guys who went to the back"—and the other evidence of defendant's guilt, including his signed confession, was so overwhelming.

**4. Criminal Law § 76.6— voluntariness of confession — sufficiency of evidence to support findings**

The evidence on *voir dire* supported the court's determination that there was no merit in defendant's contention that he confessed only because officers promised that his bail would be reduced and that he would be placed on probation in return for his testimony against an accomplice and that defendant's waiver of his rights and his confession were made knowingly, voluntarily and intentionally.

**5. Criminal Law § 112.1— reasonable doubt — possibility of innocence — harmless error**

The court's use of the phrase "possibility of innocence" as synonymous with "reasonable doubt," while disapproved, did not result in prejudice to defendant since the instruction was more favorable to the defendant than that to which he was entitled.

**6. Criminal Law § 113.7— instructions — acting in concert — aiding and abetting**

The trial court in an armed robbery case properly instructed the jury on "acting in concert" and was not required to instruct on aiding and abetting where all the State's evidence tended to show that defendant was present and with a common purpose did some act forming a part of the offense by helping accost one store employee in the

back of the store while a companion was robbing the other store employee in the front of the store.

APPEAL by defendant from *Godwin, Judge.* Judgment entered 15 July 1976 in Superior Court, GUILFORD County. Heard in the Court of Appeals 5 May 1977.

Defendant was indicted for armed robbery. He pled not guilty. At his trial, the State presented evidence to show: About 9:30 p.m. on 29 August 1974 three young black men entered the Quality Food Market in Greensboro. Only two employees were on duty. One of the men pulled out a gun and threatened to kill the cashier, Burnetta Robertson. The other two proceeded to the rear of the store, where they threatened the other employee, Jerry Fuller, with a knife. The man with the gun took approximately $2,800.00 from the cash register and then ordered Mrs. Robertson to lie down on the floor. The other two men pushed Fuller into a stockroom, threw him to the floor, and tied his hands behind his back. The three men then left the store together just as a customer was entering.

In early January 1975 Detective Brady of the Greensboro Police Department separately showed to Robertson and Fuller a group of photographs of young black males between the ages of eighteen and twenty-five. Each selected a photograph of defendant as being a person resembling one of the participants in the robbery. On 30 January 1975 defendant was arrested. On the following day, after being advised of his constitutional rights, defendant signed a written waiver of his rights and a statement concerning his participation in the robbery. This statement was in substance as follows: Defendant was riding around in a car with Ben Haith, Henry Richardson, and Larry Mitchell, "getting high on wine and reefers." Ben Haith said he was "going in this place" and told defendant and Larry Mitchell to go in with him. Ben had a .25 automatic, and he tried to get defendant to take the gun and rob the place, but defendant would not. While Henry Richardson remained in the car, the other three went in. Ben had the gun and got the money from the cash register. Defendant and Larry Mitchell walked to the far side, and Larry tied "the man" with some rope which defendant had carried in from the car. After leaving the store, they went to Ben's house, where they divided the money. Defendant got about $247.00.

Defendant presented evidence to show that on the night of 29 August 1974 he was with his girl friend. He denied going into the Quality Food Market on that date. He testified that he signed the confession only after the officers promised him a reduction in bail and probation for turning State's evidence to help convict Ben Haith. Defendant also presented as a witness, Larry Mitchell, who testified that although he participated in the armed robbery, defendant did not.

In rebuttal, the State introduced a previous signed statement of Larry Mitchell implicating defendant in the robbery.

The jury found defendant guilty. From judgment imposing a prison sentence, defendant appealed.

*Attorney General Edmisten by Associate Attorney Thomas H. Davis, Jr., for the State.*

*Assistant Public Defender D. Lamar Dowda for defendant appellant.*

PARKER, Judge.

Defendant assigns error to the admission of the in-court identification testimony of the State's witnesses, Robertson and Fuller. He contends this testimony should have been excluded because of impermissibly suggestive out-of-court photographic identification procedures. In support of this contention, defendant points out that a border on two of the group of eight photographs which were shown separately to each witness was tinged with yellow; that one of the photographs with a yellow tinge on the border was that of the defendant; and that the other photograph with a yellow tinge on the border was that of one of the other men accused of participating in the same robbery. Defendant contends that because of the distinctive yellow borders on these two critical photographs, the photographic identification procedure in this case was "patently suggestive as a matter of law." From this he argues that reversible error occurred when the court admitted the in-court identification testimony of Robertson and Fuller. We do not agree.

[1] Prior to admitting the in-court identification testimony of these two witnesses, the court in each case conducted a *voir dire* examination. After the *voir dire* examination held to determine the admissibility of Fuller's in-court identification testimony, the court made full findings of fact, both concerning the out-of-

court photographic identification procedure which had been followed and concerning the opportunity which Fuller had had to observe the two men who had come to the back of the store on the night of the robbery. In this latter connection Fuller testified at the *voir dire* hearing that the back area of the store was well lighted with fluorescent lights, which he described as "bright daylight lights," that the two men were in the back of the store with him for approximately three to five minutes, and that for much of that time "the man with the knife," whom he identified as the defendant, was facing him. The court found on this evidence that the store was well illuminated; that Fuller had had an opportunity to observe the man who held the knife at his throat; and that Fuller did observe that man. The court further found as a fact "that Fuller's impression that the defendant resembles the man who put the knife to his throat as aforesaid is based upon his recollection of the appearance of the man who put the knife to his throat as aforesaid, and that it is in nowise based upon his viewing of photographs exhibited to him by Greensboro police officers, as aforesaid." Since these findings are fully supported by the evidence, they are binding on this appeal. *State v. Woods,* 286 N.C. 612, 213 S.E. 2d 214 (1975) ; *State v. Tuggle,* 284 N.C. 515, 201 S.E. 2d 884 (1974) ; *State v. Harmon,* 21 N.C. App. 508, 204 S.E. 2d 883 (1974). Thus, even if the use of a photograph having a yellow tinged border which made it distinctive from the other photographs should be considered by itself to be impermissibly suggestive, the court's finding, which is supported by clear and convincing evidence, that Fuller's identification testimony was of independent origin supports the court's ruling that his testimony was admissible.

[2, 3]   The situation in connection with the identification testimony of the witness, Burnetta Robertson, is somewhat different. Following the *voir dire* hearing held to determine the admissibility of her in-court identification testimony, the court made no finding that her identification of the defendant was of independent origin. The court did find that "none of the photographs exhibited to Mrs. Robertson by the detective, K. W. Brady, bore any markings other than markings and shows (sic) and color placed on the photographic paper at the time of the development of the photographs." The court further found that Detective Brady exhibited all of the photographs shown Mrs. Robertson without comment regarding any photograph. On these

findings the court concluded "that no impermissible thing was said or done to or in the presence of (sic) hearing of Mrs. Robertson as the aforesaid photographs were exhibited to her." Defendant now contends that this conclusion was erroneous as a matter of law solely because of the yellow tinge, which the evidence shows resulted from the photographic developmental process and not from any action of the police, which appeared on the border of the photograph of the defendant and which made it distinctive from the other photographs. Defendant's contention presents a serious problem. Obviously, any marking or coloring on a particular photograph, whether placed there deliberately or as a result of accident, which sets it apart from others shown in a photographic lineup, presents the danger that the attention of the person viewing the lineup might be focused unduly upon that photograph and thus lead to the danger of misidentification. Obviously, also, fairness requires that every precaution should be exercised to avoid that danger. Nevertheless, the admission over defendant's objection at trial of eyewitness identification testimony following a pretrial identification by photograph will be held reversible error only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *State v. Knight,* 282 N.C. 200, 192 S.E. 2d 283 (1972). The only feature of the photographic identification procedure in the present case which was even remotely suggestive was the fact of the tinged yellow border on defendant's photograph. We do not believe that this fact alone made the photographic identification procedure followed in this case "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Moreover, Mrs. Robertson's in-court identification testimony before the jury in this case was so weak—she testified only that defendant "resembles one of the guys who went to the back"—and the other evidence of defendant's guilt, including his signed confession was so overwhelming, that the admission of her testimony, if error at all, was harmless beyond a reasonable doubt. We find no reversible error resulted from the court's ruling allowing Mrs. Robertson to testify that defendant resembled one of the robbers.

[4] Defendant assigns error to the admission in evidence of his signed confession. Prior to admitting this evidence, the court conducted another *voir dire* hearing. At this hearing defendant

testified and admitted he signed the confession after signing a waiver of his rights. He testified that he did so only because the officers promised that his bail would be reduced and that he would be placed on probation in return for his testimony against Ben Haith. The officers who took the confession denied making any such promises. At the conclusion of the *voir dire* hearing, the court made full findings of fact. These are fully supported by competent evidence. They are therefore binding on this appeal. *State v. Thompson,* 287 N.C. 303, 214 S.E. 2d 742 (1975). These findings in turn fully support the court's conclusion that the defendant "knowingly, intelligently, and intentionally waived his said rights and freely, voluntarily, intelligently, and intentionally" made his confession. There was no error in admitting the confession in evidence.

[5] Defendant has made a number of assignments of error dealing with portions of the court's charge to the jury. For example, defendant assigns error because at one point the court instructed the jury that reasonable doubt "is intended to imply a possibility of innocence." The use of the phrase "possibility of innocence" as synonymous with "reasonable doubt" has been expressly disapproved by our Supreme Court and by this Court. *State v. Edwards,* 286 N.C. 140, 209 S.E. 2d 789 (1974) ; *State v. Bryant,* 282 N.C. 92, 191 S.E. 2d 745 (1972) ; *State v. Chaney,* 15 N.C. App. 166, 189 S.E. 2d 594 (1972). However, no prejudice resulted to the defendant, since the instruction was more favorable to the defendant than that to which he was entitled.

Defendant has also assigned error to other portions of the charge dealing with reasonable doubt. The charge, when read contextually, fairly and clearly stated the law; therefore, the isolated portions to which defendant excepted will not be held prejudicial. *State v. Quick,* 20 N.C. App. 589, 202 S.E. 2d 299 (1974).

[6] Defendant has also assigned error to the failure of the court to define the doctrine of aiding and abetting and to apply it to the facts of this case. We find no error. "A person who actually commits the offense or is present with another and does some act which forms a part thereof, although not doing all of the acts necessary to constitute the crime, is a principal in the first degree." *State v. Mitchell,* 24 N.C. App. 484, 486, 211 S.E. 2d 645, 646 (1975). Where the defendant is present with another and with a common purpose does some act which

forms a part of the offense charged, the judge must then explain and apply the law of "acting in concert." *Id.* Here, defendant was indicted as an active participant for the crime of armed robbery. All the State's evidence tended to show that defendant was present and with a common purpose did some act forming a part of the offense charged by helping accost one employee in the back of the store while Ben Haith was robbing the other employee in the front of the store. The court properly instructed the jury on "acting in concert" and was under no duty to instruct on aiding and abetting. Defendant's assignment of error is without merit.

Defendant's assignments of error to the denial of his motion for nonsuit and to the denial of his motion to set aside the verdict are also overruled. There was plenary evidence to send the case to the jury. Since the motion to set aside the verdict is discretionary, the refusal to grant said motion is not reviewable on appeal, absent an abuse of discretion. *State v. Dull,* 289 N.C. 55, 220 S.E. 2d 344 (1975). Defendant has failed to show an abuse of discretion.

Defendant received a fair trial free from prejudicial error.

No error.

Judges BRITT and MARTIN concur.