STATE OF NORTH CAROLINA v. RONNIE JAMES COBB AND THOMAS BARR

No. 25

(Filed 8 May 1978)

1. **Constitutional Law § 43— right to counsel at probable cause hearing**

    A probable cause hearing is a "critical stage" of the criminal process entitling an indigent person to appointed counsel if he desires assistance of counsel.

2. **Constitutional Law § 44— effective assistance of counsel—time to prepare defense**

    Effective assistance of counsel, as guaranteed by the Sixth Amendment to the U.S. Constitution and Article I, §§ 19 and 23 of the N.C. Constitution, is denied unless counsel has adequate time to investigate, prepare and present his client's defense, but unless counsel suggests the existence of material evidence or material witnesses, the mere failure to grant a continuance in order to make investigation would not, in and of itself, constitute a denial of effective assistance of counsel.

3. **Constitutional Law § 44— counsel appointed on day of preliminary hearing—time to prepare defense**

    The trial court did not err in failing to appoint counsel for defendant until the day of his preliminary hearing and in denying defense counsel's motion for a continuance where there was no suggestion that a continuance would have led to the discovery of material witnesses or material evidence; there was no showing that the court's ruling in any way adversely affected defendant's right to effective assistance of counsel; defendant had about six weeks to exercise his right of discovery and to otherwise investigate, prepare and present his defense; and defendant expressly waived his right to counsel.

1

**4. Criminal Law § 87.1— leading questions—child rape victim**

The general rule is that leading questions may not be asked on direct examination, but leading questions may be asked of a child, particularly when inquiry is directed to delicate matters of a sexual nature; therefore, the trial court did not abuse its discretion in permitting the district attorney to direct leading questions to an eleven year old girl concerning her kidnapping followed by a brutal rape.

**5. Criminal Law § 66— in-court identification of defendant—test for admissibility**

The test to be applied in determining the admissibility of an in-court identification which is preceded by a pretrial photographic identification is whether the pretrial procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

**6. Criminal Law § 66.9— photographic identification—defendants' photographs newer—no suggestiveness**

The fact that photographs of the two defendants were newer and had not been handled as much as other photographs shown to a rape victim in a pretrial photographic identification procedure did not suggest that defendants were involved in the crime or that the witness should select their photographs as depicting her assailants, and such distinction was not impermissibly suggestive.

**7. Criminal Law § 66.12— confrontation at preliminary hearing—in-court identification not tainted**

There was no evidence to suggest that the confrontation between defendants and the prosecuting witness at a preliminary hearing in any way affected her in-court identification testimony.

**8. Rape § 11— first degree rape—female under 12—sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a prosecution for first degree rape where the victim testified without contradiction that she was eleven years old and that prior to the offense in question she had never had intercourse with anyone; she unequivocally identified defendants as the men who kidnapped and raped her; and the State, without contradiction, offered competent evidence tending to show that each defendant was over 16 years old.

**9. Kidnapping § 1.2— abduction to facilitate crime of rape—sufficiency of evidence of kidnapping**

Evidence was sufficient to be submitted to the jury in a prosecution for kidnapping where the evidence tended to show that defendants, who were over sixteen years old, unlawfully and without the consent of her parents or legal custodian removed the eleven year old victim from a restroom at a Hardee's restaurant located in New Hanover County and carried her to an apartment located in Wilmington for the purpose of facilitating the commission of the felony of rape upon her person.

**10. Criminal Law § 72— defendants' ages—opinion testimony admissible**

A police detective who was among the officers who apprehended defendants, who formally placed defendants under arrest and read them their rights, who was present when pubic hair samples were taken from each defendant,

State v. Cobb

and who was in the presence of one defendant during an apartment search had sufficient opportunity to observe defendants so as to form and express in a first degree rape trial an opinion as to their ages.

**11. Criminal Law § 72— defendants' ages—opinion testimony admissible**

In a prosecution for first degree rape, the trial court did not err in allowing a witness to state her opinion concerning defendants' ages, though the witness was relying on statements made by each defendant in her presence as well as on her observation of defendants, since any statement made by an accused which is relevant to the issue and not subject to some specific exclusionary rule may be received in evidence against him.

**12. Criminal Law §§ 73, 92— joinder of charges against two defendants—hearsay testimony inadmissible**

Defendant's contention that joinder of his trial with that of his codefendant and the subsequent rulings of the court limiting cross-examination of State's witnesses concerning statements made by his codefendant deprived him of his constitutional rights of cross-examination and confrontation is without merit, since the testimony defendant sought to elicit from the witnesses was hearsay and, though defendant showed that the joinder of his case with that of his codefendant created the "necessity" requirement for exceptions to the hearsay rule, he did not show circumstances under which the statements were made which would furnish the "circumstantial probability of trustworthiness" also required for an exception to the hearsay rule.

**13. Searches and Seizures § 11— warrantless search of vehicle—probable cause**

The trial court properly allowed into evidence items seized during a warrantless search of defendant's car at police headquarters the day after he had been taken into custody, since police officers had probable cause to stop defendant's car on the night the crimes in question were committed, the officers having heard a police dispatcher's broadcast accurately describing the car including its license number and identifying the vehicle as having possibly been used to facilitate a kidnapping and rape; and though officers had ample time to obtain a search warrant before seizing the items at the police station, there was no necessity for a warrant at that time because the probable cause which justified stopping the car and conducting a search on the day before had not dissipated and there was no unreasonable search and seizure as proscribed by the Fourth Amendment to the U.S. Constitution because the items seized were in plain view.

**14. Searches and Seizures § 14— consent to search challenged—voir dire required**

When the validity of a consent to search is challenged, the trial court must conduct a voir dire hearing to determine whether the consent was in fact given voluntarily and without compulsion.

**15. Searches and Seizures § 14— consent to search challenged—evidence on voir dire uncontradicted—findings required**

On a voir dire hearing to determine the voluntariness of a consent to search where the evidence is uncontradicted, a specific finding that a consent to search was voluntarily given is not required, and such finding is implicit in the court's denial of a motion to suppress, or overruling an objection to the introduction of, evidence seized as a result of a consent search.

**16. Searches and Seizures § 14— consent to search—defendant under arrest—sufficiency of evidence of voluntariness**

Where the State offered evidence that defendant was told why he had been arrested and the reason police wanted to search his apartment, that no threats or promises were made to defendant in order to secure his consent, and that defendant signed a consent form which contained acknowledgments that consent to search without a warrant could be refused and that consent was given voluntarily and without threats or promises of any kind, the fact that defendant was under arrest at the time the consent was given, standing alone, was insufficient to overcome an otherwise apparently voluntary consent.

**17. Searches and Seizures § 7— search incident to arrest—admissibility of blood-stained underwear, pubic hair**

In a prosecution for kidnapping and rape, the trial court did not err in allowing into evidence bloodstained underwear, pubic hair samples and a long blond hair taken from defendant after a search of his person on the night he was arrested, since the search of defendant occurred after he had been arrested upon probable cause and thus was not tainted by any unlawful arrest; it is not an unlawful search or seizure to take from an arrested person items of clothing worn by him, and the results of any examination of such clothing as well as the clothing itself are admissible at trial; the Fifth Amendment against self-incrimination does not preclude the taking of blood samples, hair samples, clothing and the like; and the Fourth Amendment precludes only those intrusions into the privacy of the body which are unreasonable under the circumstances.

**18. Rape § 11.1— rape of female under 12—jury instructions proper**

In a prosecution of defendant for the rape of a female under the age of 12, the trial court did not err in failing to instruct the jury that, in order to find defendant guilty of first degree rape, it must find that the victim's resistance was overcome by the use of deadly force or infliction of serious bodily injury, since those are not elements of the crime with which defendant was charged.

APPEAL by defendants from *Rouse, J.,* 20 June 1977 Session of NEW HANOVER Superior Court. Defendants were each charged in separate bills of indictment with kidnapping and rape.

At trial, the State offered evidence which tended to show that on the night of 22 April 1977 Rachel Sawyer, aged 11, went with her mother and two brothers to a Hardee's restaurant. As Rachel left the restroom in the restaurant, she was seized by a black man and carried "baby style" to the back seat of a nearby black and white car driven by another black man. The two men forcibly took Rachel to a bedroom on the second floor of a white frame house where they each had sexual intercourse with her. She was then taken to a place near her home and released. She walked to the home of a neighbor who observed that Rachel's

State v. Cobb

clothing was bloody and that she was still bleeding heavily. The neighbor called Rachel's mother and the police about 11:30 p.m. Rachel was taken to the hospital where it was determined that she had suffered severe lacerations of the vagina, requiring surgical repair and four days hospitalization. There was also medical testimony that spermatozoa was found in her vagina. Rachel identified defendants Cobb and Barr as her assailants.

John Harriott and Tella Ramsey were also at the same Hardee's restaurant on 22 April 1977. Harriott heard a scream and turned to see a black man coming from the restroom with a white child in his arms. The man entered the back seat of a black and white car driven by another black man. As the two men drove away, Harriott pursued the car and was able to determine that the license number on the car was JZL-171. He stopped at an armory and told a security guard what he had seen and asked him to call the police.

Between the hours of 11:00 p.m. and 12:00 p.m., police officers observed a black and white car bearing the license number JZL-171. When they pursued the car, two black men jumped from the car and ran. Both men were quickly apprehended and arrested. The two men who ran from the car were defendants Cobb and Barr. At the time of their apprehension, a police officer standing beside their car observed a gold hair barrette on the back seat. There was other testimony tending to show that each defendant was more than 16 years old.

The State offered other corroborative evidence, pertinent parts of which will be hereinafter set forth in the opinion.

Defendants offered no evidence.

The jury returned verdicts of guilty of kidnapping and guilty of first degree rape as to each defendant. Defendants were each sentenced to two consecutive life sentences.

*Rufus L. Edmisten, Attorney General, Thomas P. Moffitt, Associate Attorney, for the State.*

*Mathias P. Hunoval, for defendant appellant Cobb.*

*H. P. Laing, for defendant appellant Barr.*

BRANCH, Justice.

Defendant Barr assigns as error the failure of the court to appoint counsel until the day of his preliminary hearing on 5 May 1977.

On 25 April 1977, defendant Barr executed an affidavit of indigency, and, on 5 May 1977, when he appeared for preliminary hearing on the charges against him, District Court Judge Walker appointed attorney Harold P. Laing to represent defendant on the charges against him. Defense counsel then moved for continuance which motion was denied. Defendant contends that this ruling denied him effective assistance of counsel because appointed counsel did not have sufficient time to adequately prepare for trial.

[1, 2] A probable cause hearing is a "critical stage" of the criminal process entitling an indigent person to appointed counsel if he desires assistance of counsel. *Coleman v. Alabama*, 399 U.S. 1, 26 L.Ed. 2d 387, 90 S.Ct. 1999 (1970); *State v. Hairston*, 280 N.C. 220, 185 S.E. 2d 633, *cert. denied*, 409 U.S. 888, 34 L.Ed. 2d 145, 93 S.Ct. 194 (1972). By statute it is provided that an indigent person is entitled to counsel in felony cases, G.S. 7A-451(a)(1), and such entitlement to counsel begins as soon as feasible after the initiation of criminal process including, specifically, the preliminary hearing. G.S. 7A-451(b)(4). Effective assistance of counsel, as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Sections 19 and 23, of the North Carolina Constitution, is denied unless counsel has adequate time to investigate, prepare and present his client's defense. Even so, no set time is guaranteed and whether a defendant is denied effective assistance of counsel must be determined upon the circumstances of each case. *State v. Vick*, 283 N.C. 37, 213 S.E. 2d 335, *cert. denied*, 423 U.S. 918, 46 L.Ed. 2d 367, 96 S.Ct. 228 (1975). Unless counsel suggests the existence of material witnesses or information that would possibly lead to material evidence or material witnesses, the mere failure to grant a continuance in order to make investigation would not, in and of itself, constitute a denial of effective assistance of counsel. *State v. Gibson*, 229 N.C. 497, 50 S.E. 2d 520 (1948).

[3] In instant case, there is no suggestion that a continuance would have led to the discovery of material witnesses or material evidence. Neither is there any showing that the court's ruling in

any way adversely affected defendant's right to effective assistance of counsel. To the contrary, the record reveals that defendant had a period of about six weeks to exercise his right of discovery and to otherwise investigate, prepare and present his defense. This assignment of error must also be overruled because defendant expressly waived his right to counsel.

A defendant in a criminal proceeding whether at trial or in pretrial proceedings may waive his right to counsel if he does so freely and understandingly and with full knowledge of his right to be represented by counsel. *State v. Mems*, 281 N.C. 658, 190 S.E. 2d 164 (1972); *State v. Lynch*, 279 N.C. 1, 181 S.E. 2d 561 (1971).

G.S. 7A-457, as amended by the 1971 and 1973 Legislatures, in part provides:

> *Waiver of counsel; pleas of guilty.* — (a) An indigent person who has been informed of his right to be represented by counsel at any in-court proceeding, may, in writing, waive the right to in-court representation by counsel, if the court finds of record that at the time of waiver the indigent person acted with full awareness of his rights and of the consequences of the waiver. In making such a finding, the court shall consider, among other things, such matters as the person's age, education, familiarity with the English language, mental condition, and the complexity of the crime charged . . . . (c) An indigent person who has been informed of his right to be represented by counsel at any out-of-court proceeding, may, either orally or in writing, waive the right to out-of-court representation by counsel.

On 25 April 1977 at his first court appearance, defendant Barr executed a written waiver of counsel in which he stated that he had been informed of the nature of the charges against him, the punishment therefor, and of his right to assignment of counsel. Therein he stated that he did not desire the assignment of counsel and expressly waived his right to assignment of counsel. Pursuant to the execution of these waivers, Judge Walker thereupon certified for the record that defendant Barr executed the waivers in his presence after the meaning and effect of the waivers had been fully explained to him and after being fully informed of the nature of the proceedings against him and of his right to have counsel assigned by the court.

Under these circumstances, we find no error in the trial court's failure to appoint counsel for defendant Barr until the day of his preliminary hearing.

We find no merit in defendant Barr's contention that the trial judge erred by permittng the district attorney to ask the prosecuting witness leading questions.

[4] The general rule is that leading questions may not be asked on direct examination. However, leading questions may be asked of a child and particularly when inquiry is directed to "delicate matters of a sexual nature." The rulings of the trial judge on the use of leading questions are discretionary and will be disturbed only upon a showing of an abuse of discretion. *State v. Payne*, 280 N.C. 150, 185 S.E. 2d 116 (1971); 1 Stansbury's North Carolina Evidence, Section 31, (Brandis rev. 1973); (hereinafter referred to as Stansbury). Here the questions excepted to by defendant were directed to an 11 year old child concerning her kidnapping followed by a brutal rape. No abuse of discretion on the part of the trial judge is shown.

Defendant Barr assigns as error the admission of the testimony of Rachel Sawyer identifying him as one of the men who kidnapped and raped her. He contends that a pretrial photographic procedure and a confrontation between defendant and the prosecuting witness at a preliminary hearing were each so suggestive as to impermissibly taint the witness's in-court identification testimony.

[5] The test to be applied in determining the admissibility of an in-court identification which is preceded by a pretrial photographic identification is whether the pretrial procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. U.S.*, 390 U.S. 377, 384, 19 L.Ed. 2d 1247, 88 S.Ct. 967 (1968). *Accord: Stoval v. Denno*, 388 U.S. 293, 18 L.Ed. 2d 1199, 87 S.Ct. 1967 (1967); *State v. Long*, 293 N.C. 286, 237 S.E. 2d 728 (1977); *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974). This rule is equally applicable to all pretrial identification procedures.

[6] In instant case, defendant Cobb was identified by the prosecuting witness without any objection. However, defendant Barr's counsel objected when it became evident that Rachel

Sawyer was about to identify him as one of her assailants. When this objection was noted, the trial judge conducted a *voir dire* hearing.

On *voir dire*, Rachel Sawyer testified that Barr was the man who drove the automobile that carried her away from Hardee's on the night of 22 April 1977 and that he was the second man who had intercourse with her on that night. She was taken some distance across the city and into a second floor apartment located in a white house. She was in defendant's presence for more than an hour, and while they were in the apartment, there was a light beside the radio in the bedroom which permitted her to see their faces. She had an opportunity to observe defendant Cobb's face during the ride to the apartment.

On 23 April 1977, Detective Todd showed her a group of photographs, and she picked out the photographs of Cobb and Barr as the men who kidnapped and raped her. No one indicated which photograph she was to pick out. She stated, "My identification of Barr and Cobb is based on seeing them on the night of April 22, 1977, at Hardee's and in the apartment."

Officer Martha Lanier testified that she saw Rachel Sawyer at the hospital on the night of 22 April 1977, and Rachel told her that she could identify "the two men."

Detective Richard Todd testified that on 28 April, he carried seven photographs of black males of approximately the same age, build, and complexion to the home of Rachel Sawyer. He asked Rachel to see if she saw anyone in the group who had committed the offense against her. Rachel, without hesitation and without any prompting on his part, picked out the photographs of Barr and Cobb. On cross-examination, defense counsel elicited from the witness the fact that the photographs of Cobb and Barr were more recently made and had not been handled as much as the others.

Defendant offered no evidence on *voir dire*.

At the conclusion of the *voir dire*, the trial judge found facts consistent with the above-recited testimony, including a finding [denominated as a conclusion of law] "that the in-court identification of defendant is of independent origin based solely on what

the prosecuting witness saw at the time of the alleged crime and does not result from any out of court confrontation or from any photographs or from any other pretrial identification procedures suggestive or conducive to her statements of identification." The court thereupon ruled that the identification testimony was admissible.

We find nothing impermissibly suggestive in the pretrial photographic identification procedure. Defendant contends that the procedure was impermissibly suggestive in that the photographs of him and defendant Cobb were newer than the other photographs used. We disagree. Even assuming that the newness of defendant's photograph may have been noticed by the witness, such a distinction certainly does not suggest that he was involved in the crime or that the witness should select his photograph as depicting one of her assailants. *See, State v. Davis*, 294 N.C. 397, --- S.E. 2d --- (1978). The "suggestiveness" of the photographic procedures employed in instant case is so minimal as to be nonexistent.

[7] Neither does the record evidence support defendant's contention that the viewing of defendant by the prosecuting witness at a preliminary hearing tainted her in-court identification testimony. We have consistently held that "unrigged" courtroom confrontations are not violative of due process. *State v. Jackson*, 284 N.C. 321, 200 S.E. 2d 626 (1973); *State v. Bass*, 280 N.C. 435, 186 S.E. 2d 384 (1972); *State v. Haskins*, 278 N.C. 52, 178 S.E. 2d 610 (1970). We find nothing in this record which suggests that the confrontation between defendants and the prosecuting witness at a preliminary hearing in any way affected her in-court identification testimony. Further, the court's finding, "That the in-court identification of the defendant is of independent origin based solely on what the prosecuting witness saw at the time of the alleged crime and does not result from any out of court confrontation or from any photographs or from any other pretrial identification procedures suggestive or conducive to her statement of identification.", was supported by plenary uncontradicted evidence and is, therefore, binding on us. *State v. Tuggle*, 284 N.C. 515, 201 S.E. 2d 884 (1974); *State v. Morris*, 279 N.C. 477, 183 S.E. 2d 634 (1971).

The trial judge properly overruled defendant Barr's objections to the in-court identification testimony.

Defendant Barr contends that the trial judge erred by denying his motions for directed verdicts of not guilty.

[8]   In a criminal action, a motion for a directed verdict and a motion for judgment as of nonsuit have the same legal effect. *State v. Glover*, 270 N.C. 319, 154 S.E. 2d 305 (1967). In passing upon such a motion, the evidence must be taken in the light most favorable to the State, and the State must be given the benefit of every inference reasonably flowing therefrom. Only evidence favorable to the State is considered and contradictions, even in the State's evidence, are for the jury and do not warrant a granting of the motion. When so considered, the motion should be denied when there is substantial evidence, direct, circumstantial or both from which the jury could find that the offense charged was committed and that the defendant perpetrated the offense or was one of its perpetrators. *State v. Goines*, 273 N.C. 509, 160 S.E. 2d 469 (1968). In support of his motion, defendant first argues that there was no sufficient evidence to carry the charge of first degree rape to the jury. We disagree.

G.S. 14-21, in part, provides:

Every person who ravishes and carnally knows any female of the age of 12 years or more by force and against her will, or who unlawfully and carnally knows and abuses any female child under the age of 12 years, shall be guilty of rape, and upon conviction, shall be punished as follows:

(1) First-Degree Rape —

a. If the person guilty of rape is more than 16 years of age, and the rape victim is a virtuous female child under the age of 12 years, the punishment shall be death . . . .

Rachel Sawyer testified, without contradiction that she was 11 years old and that prior to 22 April 1977 she had never had intercourse with anyone. She unequivocally identified defendants as the men who kidnapped and raped her. The State, without contradiction, offered competent evidence tending to show that each defendant was over 16 years old.

[9]   We turn to defendant's argument that the evidence was not sufficient to repel his motion for a directed verdict of not guilty as to the charge of kidnapping. G.S. 14-39, *inter alia*, provides:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

\* \* \*

(2) Facilitating the commission of any felony . . . .

There was ample evidence tending to show that defendants Cobb and Barr, who were over 16 years of age, unlawfully and without the consent of her parents or legal custodian removed 11 year old Rachel Sawyer from a restroom at a Hardee's restaurant located on Carolina Beach Road in New Hanover County and carried her to an apartment located at 701 South Second Street in Wilmington, North Carolina, for the purpose of facilitating the commission of the felony of rape upon her person.

The trial judge did not commit error in refusing to grant defendant Barr's motions to direct verdicts of not guilty on the charges of first degree rape and kidnapping.

Defendant Barr argues that the trial judge erred by permitting opinion and hearsay testimony as to his age.

[10] Detective Richard Todd of the Wilmington Police Department testified that he was among the officers who apprehended defendants. He was the officer who formally placed defendants under arrest and informed them of their constitutional rights. He was present during the time that pubic hair samples were taken from each defendant and was also in the presence of defendant Cobb when the apartment was searched. Upon this background, the trial judge permitted Detective Todd to testify that in his opinion defendant Barr was 18 or 19 years old, and defendant Cobb was between the ages of 23 and 25 years old.

In a criminal case, the opinion of a lay witness concerning the age of an accused is admissible into evidence when the witness has had adequate opportunity to observe the accused and when the age of the accused is one of the essential elements of the crime for which he is being tried. *State v. Gray*, 292 N.C. 270, 233

State v. Cobb

S.E. 2d 905 (1977). Here the age of each defendant was an essential element of the charge of first degree rape. In our opinion, this trained police officer had sufficient opportunity to observe defendants so as to form and express an opinion as to the age of defendants.

[11] During the direct examination of State's witness Patricia Young, she stated she had known defendant Cobb for approximately eight months and had known defendant Barr for about a week and a half. Cobb had visited in her home on several occasions. She further testified that she saw both Barr and Cobb on 22 April 1977 when she executed a title to a 1968 Chrysler Imperial automobile to Barr and delivered possession of that automobile to him. The district attorney continued his direct examination of the witness as follows:

Q. Do you have an opinion as to the age of Thomas Barr?

MR. HUNOVAL: OBJECTION.

MR. LAING: OBJECTION.

COURT: OVERRULED.

Q. Do you?

A. Yes, and also, applying for insurance he told the lady, eighteen.

MR. LAING: OBJECTION. MOTION TO STRIKE.

COURT: The objection is overruled and the motion to strike is denied.

Q. Do you have an opinion as to the age of Ronnie James Cobb?

A. I do.

MR. HUNOVAL: OBJECTION.

COURT: OVERRULED.

A. I believe he told me at one time twenty-three, if I remember correctly.

Obviously, the witness Young, in addition to her observation of defendants, was relying on statements made by each of them in her presence.

Any statement made by an accused which is relevant to the issue and not subject to some specific exclusionary rule may be received in evidence against him. This is so even when the statements may have been made at a time when they were not against his interest. The basis for this rule is that the only possible reason which could be urged against such statement is that it is hearsay, and it would be irrational for a party to object to his own declarations on that ground. 2 Stansbury, Section 167.

We hold that the trial judge correctly admitted the testimony concerning the age of each defendant.

[12] Defendant Barr contends that the joinder of his trial with that of codefendant Cobb and the subsequent rulings of the court limiting cross-examination of State's witnesses concerning statements made by his codefendant deprived him of his constitutional rights of cross-examination and confrontation.

During the respective cross-examination of officers Prescott, Elledge and Norris, counsel for defendant Barr posed questions which, if the answers had been admitted, would have resulted in testimony that Cobb had said (1) that he (Cobb) had nothing to do with the crimes, (2) that Barr was involved in the crimes, (3) that he was not going to cover up for Barr and (4) that he had not seen Barr on the day the crimes were committed. The trial judge sustained objections to each of these questions.

In each instance, the question posed by defense counsel sought to obtain testimony concerning an extra-judicial statement made by defendant Cobb rather than the witness for the purpose of proving the truth of the matter asserted. This is hearsay evidence, and such evidence will ordinarily be excluded unless it falls within one of the many exceptions to that rule. 1 Stansbury, Section 138. We do not deem it necessary to here list and consider each exception. Suffice it to say that in our opinion, the evidence under consideration does not fall within any of the well-recognized exceptions to the rule. *See,* 1 Stansbury, Section 144, *et seq.* However, there are recent decisions which permit, and even require, creation of new reasonable exceptions  to the hearsay rule under given circumstances.

In *Chambers v. Mississippi*, 410 U.S. 284, 35 L.Ed. 2d 297, 93 S.Ct. 1038 (1973), the defendant who was charged with murder offered a witness for the purpose of introducing the witness's written confession that he committed the crime for which the defend-

ant was being tried. On cross-examination, the witness repudiated the confession and asserted an alibi. Defendant thereafter offered three witnesses for the purpose of testifying that shortly after the murder, this third party orally confessed to them that he committed the crime. The trial court excluded this evidence as hearsay, and the defendant's conviction was affirmed by the Supreme Court of Mississippi. The United States Supreme Court reversed defendant's conviction holding that the testimony of the three witnesses as to the oral confessions was admissible. In so holding, the Court stated:

> . . . Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed. The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to Chambers' defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice. 410 U.S. at 302.

In *State v. Vestal*, 278 N.C. 561, 582, 180 S.E. 2d 755 (1971), Justice Lake, speaking for the Court, stated:

> The twofold basis for exceptions to the rule excluding hearsay evidence is necessity and a reasonable probability of trustworthiness. As Professor Morgan has said in 31 *Yale Law Journal* 229, 231, "If it is to be admitted, it must be because there are some good reasons for not requiring the appearance of the utterer and some circumstance of the utterance which performs the functions of the oath and cross-examination."

In instant case, we are of the opinion that the joinder of defendants' cases created the "necessity" requirement now recognized by the courts in that Cobb was made unavailable as a witness for Barr. However, unavailability of the declarant, alone, is not enough to make a hearsay statement admissible. *See, Improvement Co. v. Andrews*, 176 N.C. 280, 96 S.E. 1032 (1918).

There must also be a "reasonable probability of trustworthiness" to satisfy the function of the oath and examination.

The declarant's statements in the case *sub judice* were those of a prime suspect who was striving to direct the finger of suspicion from himself to another. The credibility of his declarations is not enhanced by a showing that they inculpated the declarant. Therefore, we find nothing in the circumstances under which these statements were made which would furnish the necessary "circumstantial probability of trustworthiness." 5 Wigmore on Evidence, Section 1422 (3d ed. 1974). Further, examination of the content of the excluded statements shows that the ruling benefited rather than prejudiced defendant Barr.

For reasons stated, this assignment of error is overruled.

By his next assignment of error, defendant Barr contends that the trial court committed reversible error by allowing the introduction of evidence seized as a result of (1) the warrantless search of his car at police headquarters the day after he had been taken into custody, (2) the warrantless search of the apartment he shared with defendant Cobb, and (3) the search of his person.

[13] Following a *voir dire* hearing to determine the admissibility of the evidence taken from the car, Judge Rouse found that after the car had been stopped by the police and defendants had fled, a gold barrette was observed on the back seat of the car. He also found that when the car was taken to the police station, Officer Caulk entered the car to remove the barrette and observed a green necklace on the back seat and blond hair on the floor. He took possession of all these items. The trial judge concluded that since the items seized were in plain view, no search warrant was required and overruled defendant's objection to the admission of this evidence.

Defendant contends, however, that the police did not have sufficient probable cause to stop the car on the night of 22 April 1977 and that after the car was taken to the police station, a warrant should have been obtained before it was searched. We do not agree.

The evidence presented shows that on the night of 22 April 1977, the police dispatcher had broadcast an accurate description of the car including its license number and identified the vehicle

as having possibly been used to facilitate a kidnapping and rape. Thus, police officers had probable cause to stop the car. *Chambers v. Maroney,* 399 U.S. 42, 26 L.Ed. 2d 419, 90 S.Ct. 1975 (1970); *State v. Leggette,* 292 N.C. 44, 231 S.E. 2d 896 (1977); *State v. Phifer,* 290 N.C. 203, 225 S.E. 2d 786 (1976), *cert. denied,*---U.S.---(1977). Moreover, under these circumstances, the officers would have been justified in conducting a complete search of the car at the scene. *Carroll v. United States,* 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280 (1925); *State v. Phifer, supra.*

Admittedly, the officers had ample time to obtain a search warrant before seizing the items at the police station. However, there was no necessity for a warrant at that time because (1) the probable cause which justified stopping the car and conducting a search on the day before had not dissipated, *Texas v. White,* 423 U.S. 67, 46 L.Ed. 2d 209, 96 S.Ct. 304 (1975); *Chambers v. Maroney, supra,* and (2) there was no unreasonable search and seizure as proscribed by the Fourth Amendment to the United States Constitution because the items seized were in "plain view." *U.S. v. Polk,* 433 F. 2d 644 (5th Cir. 1970); *People v. Lott,* 33 Ill. App. 3d 779, 338 N.E. 2d 434 (1975); *State v. King,* 191 N.W. 2d 650 (Iowa, 1971), *cert. denied,* 406 U.S. 908, 31 L.Ed. 2d 819, 92 S.Ct. 1617 (1972).

We hold that the trial judge correctly admitted the seized items into evidence.

By this same assignment of error, defendant Barr contends that the trial court erred by allowing into evidence certain items seized without a search warrant from the apartment which he shared with defendant Cobb. Defendant Barr argues that the circumstances surrounding the execution of the consent form which he signed indicated that he was reluctant to have the apartment searched and that he signed the consent form only because he was in custody.

[14] When the validity of a consent to search is challenged, the trial court must conduct a *voir dire* hearing to determine whether the consent was in fact given voluntarily and without compulsion. *State v. Vestal, supra.* Merely because a defendant is under arrest when consent is given does not render the consent involuntary. *See, Davis v. U.S.,* 328 U.S. 582, 90 L.Ed. 1453, 66 S.Ct. 1256, *reh. denied,* 329 U.S. 824, 91 L.Ed. 700, 67 S.Ct. 107 (1946).

It is, however, a factor which must be considered, *Hubbard v. Tinsley*, 350 F. 2d 397 (10th Cir. 1965); *State v. King*, 44 N.J. 346, 209 A. 2d 110 (1965), and places a greater burden upon the State to show voluntariness. *Greenwell v. U.S.*, 336 F. 2d 962 (D.C. Cir. 1964); *Barnes v. State*, 25 Wisc. 2d 116, 130 N.W. 2d 264 (1964).

[16] In instant case, the trial judge conducted a *voir dire* hearing to determine whether defendants had voluntarily signed consent forms. Detective Norris testified that he told defendants why they had been arrested and the reason police wanted to search their apartment. He further testified that he made no threats or promises to defendants in order to secure their consent. The State introduced the consent forms which contained acknowledgments that consent to search without a warrant could be refused and that consent was given voluntarily and without threats or promises of any kind. Barr signed the consent form. The State also offered other corroborative and cumulative evidence. Defendant Barr did not testify on *voir dire*.

Following presentation of evidence, the trial judge made the following findings of fact and conclusions of law:

> From the evidence offered on voir dire with respect to the entry and search of the premises occupied by the defendants, Cobb and Barr, at 701 South Second Street, the Court makes the following findings of fact:
>
> \*   \*   \*
>
> 2. The defendant, Thomas Barr, gave consent to the entry and search in writing as indicated by State's Voir Dire Exhibit Number Nine.
>
> \*   \*   \*
>
> 5. Since both the defendants gave consent to the search of the premises occupied by them at 701 South Second Street, the entry and search was lawful and any evidence procured pursuant to such search is admissible. The objection of both defendants is therefore OVERRULED.

[15] We note that the trial court's findings did not include a specific finding that Barr's consent was free and voluntary. *See, State v. Vestal, supra*. However, where the evidence is uncontradicted, a specific finding that a consent to search was volun-

tarily given is not required and such a finding is implicit in the court's denial of a motion to suppress, or overruling an objection to the introduction of, evidence seized as a result of a consent search. *State v. Simmons*, 286 N.C. 681, 213 S.E. 2d 280 (1975); *State v. Little*, 270 N.C. 234, 154 S.E. 2d 61 (1967).

[16] Here, the State offered ample evidence demonstrating the voluntariness of Barr's consent "contradicted" only by the fact that he was under arrest at the time the consent was given. This fact, alone, is insufficient to overcome an otherwise apparently voluntary consent. Having voluntarily consented to the search of his apartment, the items seized therefrom were correctly admitted into evidence. *U.S. v. Matlock*, 415 U.S. 164, 39 L.Ed. 2d 242, 94 S.Ct. 988 (1974). We, therefore, hold that the trial court properly overruled defendant Barr's objection.

[17] By this assignment of error, defendant Barr also contends that the trial court erred by allowing into evidence items taken from both defendants after a search of their persons on the night they were arrested. Shortly after defendants had been arrested, they were ordered to disrobe for the purposes of obtaining pubic hair samples. During this procedure, both men were observed to be wearing bloodstained underwear which was taken from them. A long blond hair was also found in the hair sample taken from defendant Barr. The underwear and blond hair were introduced at trial over defendant Barr's objection. While defendant Barr has preserved his exception, he has advanced no argument to support his contention that the introduction of this evidence was error.

The search of defendant occurred after he had been arrested upon probable cause and thus was not tainted by any unlawful arrest. Further, it is not an unlawful search or seizure to take from an arrested person items of clothing worn by him, and the results of any examination of such clothing as well as the clothing itself are admissible at trial. *State v. Shedd*, 274 N.C. 95, 161 S.E. 2d 477 (1968); *State v. Ross*, 269 N.C. 739, 153 S.E. 2d 469 (1967); 5 Am. Jur. 2d, *Arrest*, Section 73 (1962). Moreover, the Fifth Amendment prohibition against self incrimination does not preclude the taking of blood samples, hair samples, clothing, and the like, *State v. King*, 287 N.C. 645, 215 S.E. 2d 540 (1975); *State v. Wright*, 274 N.C. 84, 161 S.E. 2d 581 (1968), *later appeal*, 275 N.C. 242, 166 S.E. 2d 681, *cert. denied*, 396 U.S. 934, 24 L.Ed. 2d

232, 90 S.Ct. 275 (1969), and the Fourth Amendment precludes only those intrusions into the privacy of the body which are unreasonable under the circumstances. *Brent v. White*, 398 F. 2d 503 (5th Cir. 1968), *cert. denied*, 393 U.S. 1123, 22 L.Ed. 2d 130, 89 S.Ct. 998 (1969); *State v. Sharpe*, 284 N.C. 157, 200 S.E. 2d 44 (1973).

Defendants were charged with rape, and we are of the opinion that the nature and extent of the search of their persons was reasonable under the circumstances and did not violate any of their constitutionally protected rights.

We find no error in the introduction of evidence seized during searches of the car, the apartment, and his person. This assignment of error is, therefore, overruled.

[18] Finally, defendant Barr argues that the trial judge erred by failing to instruct the jury that in order to find him guilty of first degree rape, it must find that the victim's resistance was overcome by the use of deadly force or infliction of serious bodily injury. This contention is without merit. The defendants were on trial for the rape of a female under the age of 12, and the use of deadly force or infliction of serious bodily injury is not an essential element of such crime. G.S. 14-21.

The only assignment of error presented by defendant Cobb is whether the trial judge erred in signing and entering the judgments.

This assignment of error presents the face of the record proper for review and such review is ordinarily limited to the question of whether error of law appears on the face of the record and whether the judgment is regular in form. *State v. Kirby*, 276 N.C. 123, 171 S.E. 2d 416 (1970); *State v. Mallory*, 266 N.C. 31, 145 S.E. 2d 335 (1965), *cert. denied*, 384 U.S. 927, 16 L.Ed. 2d 531, 86 S.Ct. 1443 (1966). Here no error of law appears on the face of the record, and the judgments are regular in form.

We note, however, that defendant Barr's assignments of error adequately raised for our consideration all possible errors on the part of the trial judge and the facts of this case are such that if prejudicial error had been committed against defendant Barr, the same error would have been committed against defendant Cobb. Had prejudicial error been made to appear, we would have,

*ex mero motu,* granted the same relief to each defendant. Our careful examination of all the assignments of error and this entire record discloses no error as to either defendant which would warrant a new trial.

No error.