State v. Carroll

STATE OF NORTH CAROLINA v. CHRISTOPHER WADE CARROLL

No. 8228SC853

(Filed 21 June 1983)

1. Criminal Law § 66.16— in-court identification—properly admitted

The trial court properly allowed an in-court identification of defendant where there was evidence which showed that the prosecuting witness saw the assailant for about two minutes; that the assailant's face was very close to her face during the assault; that the porch light partially illuminated the room; and that the prosecuting witness had seen the person on earlier occasions. This evidence supported the trial court's finding that the prosecuting witness's identification of defendant was based on her observation of him at the time of the incident.

2. Criminal Law § 66.9— photographic identification—not unconstitutionally suggestive

A pretrial photographic identification procedure was not suggestive where the victim was shown six photographs of white males, and she selected the photograph of defendant, but asked to see a front view picture so that she could be absolutely sure of the identification, and the victim was shown front

State v. Carroll

view pictures of six white males, one picture being that of the defendant and the other five pictures being different from the five that accompanied defendant's picture in the first photographic lineup. The fact that the defendant's photograph was the only one common to both lineups did not make the procedure impermissibly suggestive.

**3. Criminal Law § 66.9 — pretrial photographic identification — not impermissibly suggestive**

Two photographic identification procedures were not impermissibly suggestive where in the first lineup, the five individuals other than defendant were depicted by both side and front views, while defendant was represented only by a side view picture, and where in the second lineup, defendant's photograph was somewhat darker than the other photographs, it showed more of his body than did the others, and the hairstyles of the other men were different from his hairstyle.

**4. Criminal Law § 66.9 — photographic identification — statement by officer that defendant lived in same complex — subsequent photographic identification**

Where, between the time a prosecuting witness positively identified the defendant as her assailant from a side view photograph and the time that she identified her assailant from a front view photograph, a police officer told her that the man she had selected lived in the same apartment complex that she did, defendant failed to show that this fact made it substantially likely that either identification was mistaken.

**5. Criminal Law § 114.2 — instructions — no expression of opinion on evidence**

The trial judge did not express an opinion in his summary of the prosecuting witness's testimony as to whether or not she saw defendant's mustache. G.S. 15A-1232.

Judge EAGLES dissenting.

APPEAL by defendant from *Friday, Judge*. Judgment entered 15 March 1982 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 14 February 1983.

As Lisa Felmet was leaving her apartment for work on the morning of 6 November 1981, she opened her front door and saw a man standing on the porch with one hand covering the lower part of his face. The man forced his way into the apartment and pushed Ms. Felmet to the floor. He touched her genital area with one hand and tried to unbutton her blouse with the other. A brief struggle ensued, during which time Ms. Felmet was screaming. After about 10 seconds, the man ran away.

The police investigated the incident and later that day, showed Ms. Felmet a photographic lineup. Ms. Felmet picked defendant's picture out of this lineup and told the police she thought

he was the perpetrator. However, because the police only had a side view photograph of defendant, Ms. Felmet asked to see a front view picture of him in order to be certain of the identification. The authorities took a front view photograph of defendant on 10 November 1981. They included this picture in a second photographic lineup shown to Ms. Felmet on 11 November 1981, and she again identified the defendant as the man who had assaulted her.

Defendant was arrested and charged with first degree burglary and attempted rape. He was convicted by a jury of both offenses. From the court's imposition of an active prison term, defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Kaye R. Webb, for the State.*

*Arthur E. Jacobson; and Joel B. Stevenson for defendant appellant.*

WEBB, Judge.

[1] Defendant contends the trial court should not have allowed the in-court identification of defendant as the offender by the prosecuting witness, Lisa Felmet. He argues first that the circumstances at the time of the assault were such that she could not have recognized defendant as the assailant. Defendant maintains that the evidence shows it was dark outside the apartment except for the porch light, and that all the lights inside the apartment had been extinguished; that the assailant was in the room for only 10 seconds; that the victim could see only a facial outline of him; that the assailant had his hand over his face part of the time; and that the victim could not even tell whether or not he had a mustache. Other evidence was presented, however, showing that Ms. Felmet saw the assailant for about two minutes; that the assailant's face was very close to her face during the assault; that the porch light partially illuminated the room; and that Ms. Felmet had seen the person on earlier occasions. She testified in court that the man who had attacked her on 6 November 1981 was the defendant. The trial court, after a *voir dire* hearing in the jury's absence, found that the prosecuting witness's identification of defendant was based on her observation of him at the time of the incident. We believe this finding is supported by the evidence.

The evidence brought to our attention by the defendant goes merely to the weight and credibility of the identification, not to its admissibility, and was for the jury's consideration.

[2]  Defendant next contends it was error to admit the in-court identification testimony because it was so tainted by impermissibly suggestive pretrial photographic procedures that it violated due process of law.

After a careful review of the evidence concerning the two occasions during which Ms. Felmet positively identified the defendant by way of photographs, we do not believe that the pretrial photographic lineups were conducted in an unconstitutionally suggestive manner. On both occasions, the victim was shown six photographs of white males. The police did not suggest that Ms. Felmet choose any of the photographs but merely asked her to see if she recognized anyone who looked like the assailant. On the first occasion, she selected the photograph of the defendant, but asked to see a front view picture so that she could be absolutely sure of the identification. On the second occasion, the victim was shown front view pictures of six white males, one picture being that of the defendant and the other five pictures being different from the five that accompanied defendant's picture in the first photographic lineup. Ms. Felmet again picked defendant's photograph.

Defendant's photograph was the only one common to both lineups. He argues that this made the procedure impermissibly suggestive. We are bound by earlier decisions of this Court and our Supreme Court to reject this argument. *See State v. Leggett,* 305 N.C. 213, 287 S.E. 2d 832 (1982) and *State v. Battle,* --- N.C. App. ---, 300 S.E. 2d 276 (1983).

[3]  Defendant next argues it was impermissibly suggestive that his photograph was presented in each lineup in a different manner than were the other photographs. In the first lineup, the five individuals other than defendant were depicted by both side and front views, while defendant was represented only by a side view picture. In the second lineup, defendant argues that his photograph was somewhat darker than the other photographs, that it showed more of his body than did the others, and that the hairstyles of the other men were different from his hairstyle. We do not believe that differences like these create a suggestiveness

that is substantially conducive to misidentification. *See, e.g., U.S. v. Lincoln*, 494 F. 2d 833 (9th Cir. 1974) [lineup with color photograph of defendant and black-and-white photographs of others held constitutional]; *State v. Cobb*, 295 N.C. 1, 243 S.E. 2d 759 (1978) [fact that defendant's photograph was newer than others in the lineup held not unnecessarily suggestive]; *State v. Gray*, 292 N.C. 270, 233 S.E. 2d 905 (1977) [different hairstyles]; *State v. Conyers*, 33 N.C. App. 654, 236 S.E. 2d 393, *appeal dismissed*, 293 N.C. 362, 238 S.E. 2d 150 (1977) [defendant's photograph had yellow-tinged border as result of the development process which made it distinctive from the other photographs]. We, therefore, find no merit in this contention.

[4] After Ms. Felmet identified defendant in the first lineup, a police officer apparently told her that the man she had selected lived in the same apartment complex that she did. Defendant contends that this fact drew the victim's attention to him in the second lineup, and made the procedures impermissibly suggestive. This argument is without merit. When informed that defendant lived in the apartments, Ms. Felmet had already viewed the first lineup and positively identified the defendant as her assailant. It is true that she asked to see a front view picture of him and was subsequently shown a second lineup, but this was done so that she could be completely sure of the identification. Furthermore, she was not told that defendant was a suspect, only that he lived in the same complex. It is at least as likely that this suggested to the victim that because she may have seen the defendant before at the apartments, her first identification was a mistaken one. Yet she selected his photograph again from the second lineup. Defendant has failed to show that this fact made it substantially likely that either identification was mistaken.

We hold that the photographic lineups were not impermissibly suggestive and that the witness's in-court identification of defendant was properly allowed into evidence.

[5] In his second assignment of error defendant contends the trial judge expressed, in his instructions to the jury, his opinion that defendant was the person who had assaulted Ms. Felmet. That portion of the charge to which defendant takes issue reads as follows:

"Now you will recall, ladies and gentlemen, that for the State of North Carolina the first witness to take the stand was Lisa Felmet. She testified . . . that she saw the defendant's face in the apartment; that he did not have any glasses on and that *she could not see the mustache because his hand was over his mouth* and that she did not notice any mustache and did not see any mustache; that he was in the light on the porch and there was light on the inside of the room but that she did not see any mustache . . . his hand was under his mouth — over his mouth under his nose . . . ." (Emphasis added.)

We note first that defendant failed to object to the court's instruction before the jury retired and therefore waived any opportunity to assign error to portions of the instructions. However, considering the merits of his contentions, we find no error in the charge.

Defendant argues that whether or not the assailant had a mustache was his primary defense since he did, at the time in question, have a prominent mustache. He contends the judge's instruction removed from the jury's consideration the question of whether the assailant had a mustache and in this way intimated that the judge was of the opinion that the defendant was the assailant. We cannot agree. The trial judge has a duty to summarize the evidence presented to the extent necessary to explain the application of the law to the evidence. G.S. 15A-1232. Lisa Felmet testified that she "did not see a mustache when he was on the front porch because of his hand covering his mouth" and that she "did not notice a mustache because I was not looking for one." We believe the instructions to which defendant objects were a proper summary of this evidence. We do not believe these instructions in any way intimated the opinion of the judge as to any question of fact to be decided by the jury. This assignment of error is overruled.

No error.

Chief Judge VAUGHN concurs.

Judge EAGLES dissents.

Judge EAGLES dissenting.

I respectfully dissent. The majority deals with each asserted error separately, each independent of the others.

It is correct that two photographic showups of six persons each in which defendant was the only one appearing in both is not sufficient standing alone to conclude that the identification was impermissibly suggestive. *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982); *State v. Battle*, 61 N.C. App. 87, 300 S.E. 2d 276 (1983).

It is also true that the defendant's photograph, presented in a different manner, i.e., one view of defendant versus two views of each other person in the photographic showup, is not sufficient standing alone to require a finding that the procedure was impermissibly suggestive. *State v. Conyers*, 33 N.C. App. 654, 236 S.E. 2d 393, *appeal dismissed* 293 N.C. 362, 238 S.E. 2d 150 (1977).

Furthermore, it has been held that where the hairstyles of all other persons in a photographic showup (except defendant's) are dissimilar to the description given by the victim, it is not sufficient standing alone to require a finding that the procedure was impermissibly suggestive. *State v. Gray*, 292 N.C. 270, 233 S.E. 2d 905 (1977).

Finally, the fact that the photograph of the defendant is newer than the others and was obtained especially for this showup is not by itself unnecessarily suggestive. *State v. Cobb*, 295 N.C. 1, 243 S.E. 2d 759 (1978).

I would hold that the pre-trial photographic identification was subject to impermissibly suggestive procedures and must be considered in light of the totality of the circumstances including the following:

(a) In the identification of her assailant, prosecutrix never mentioned a mustache and never noticed a mustache on her attacker (according to her trial testimony). At the time of the offense, this defendant had what was characterized as a prominent mustache.

(b) The assailant covered his face with his hand and was seen in the predawn dark by the prosecutrix, on the porch where there was a porch light, for just "two or three sec-

onds" and for another ten seconds in an area of the apartment so dimly lit that only a facial outline of the assailant was discernible.

(c) All other persons in the photographic showups were represented by two photographs each, while defendant was depicted in one photograph.

(d) At the first photographic showup, the prosecutrix selected defendant's photograph on a tentative basis but wanted a second photograph because she was uncertain.

(e) Between the time of the first and second photographic showup a police officer told the prosecutrix that the photograph about which she had been unsure was of a resident of her apartment complex.

(f) Following the officer's conversation with the prosecutrix about the defendant's residence in the same apartment complex, prosecutrix was shown a second group of photographs of six individuals in which defendant was the only one who had also been depicted in the first lineup (albeit by only one photograph). Upon viewing the second photographic showup, prosecutrix then acknowledged recognizing the defendant as a resident of her apartment complex and acknowledged having seen him around the apartment complex before and since the attack. She thereafter identified him as her assailant.

(g) Prosecutrix's description of her assailant described his hair length as coming down near the ears, just over the ears or exactly to the center of the ears. Of the photographs displayed, only the defendant's hairstyle roughly approximated that description—all others were not even remotely similar. This dissimilarity of hairstyles was noticeable in both photographic showups.

In the case *sub judice*, as distinguished from *Leggett* and other cases cited by the majority, the observation by the prosecutrix was not in broad daylight, but was at night, before dawn, momentarily on a porch and in a room illuminated only by an outside porch light. The total period of observation was only a very brief time—ten seconds—in the heat of a violent struggle which resulted in the assailant running away. Here, there was no in-

State ex rel. Utilities Comm. v. Seaboard Coast Line Railroad

person lineup under the scrutiny of defendant's attorney in conjunction with the photographic identification; only two unsupervised photographic showups.

Prosecutrix testified that at the second showup she recalled having seen defendant in the apartment complex where they both lived and thereupon "put two and two together" and then named defendant as her assailant. The function of an identification witness is to relate what they saw or otherwise observed — not to piece together factors and not to jump to conclusions properly within the province of the jury.

As the cases indicate, no one of these suggestive factors *standing alone* would be sufficient to characterize the procedure as impermissibly suggestive. Here, however, these factors do not stand alone; they stand together cumulatively and each adds to the overall suggestiveness of the identification procedure. When an extrajudicial identification is surrounded by so many suggestive factors, it is suspect. Considering the totality of the circumstances, as we are required to do, I would hold that the combination of the suggestive factors and procedures is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Based on the impermissibly suggestive procedures, I would reverse.